Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| REBECCA R. WATTS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL WATTS, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. |
| | ) | |
| vs. | ) | Division: |
| | ) | |
| HIMS & HERS HEALTH, INC., | ) | |
| Serve:  2269 Chestnut St, 523 | ) | |
| San Francisco, CA  94123 | ) | |
| | ) | |
| HIMS, INC., | ) | |
| Serve: Capitol Corporate Services, Inc. | ) | |
| 222 E. Dunklin, Ste. 102 | ) | |
| Jefferson City, MO  65101 | ) | |
| | ) | |
| XECARE LLC, | ) | **JURY TRIAL REQUESTED** |
| Serve:  c/o Hims & Hers Health, Inc. | ) | |
| 2269 Chestnut St, 523 | ) | |
| San Francisco, CA  94123 | ) | |
| | ) | |
| BAILEY HEALTH, LLC, | ) | |
| Serve:  c/o Hims & Hers Health, Inc. | ) | |
| 2269 Chestnut Street, #523 | ) | |
| San Francisco, CA  94123 | ) | |
| | ) | |
| RYAN PHASOUK, M.D., | ) | |
| Serve:  c/o Hims & Hers Health, Inc. | ) | |
| 2269 Chestnut Street, #523 | ) | |
| San Francisco, CA  94123 | ) | |
| | ) | |
| | ) | |
| JOHN DOES 1 THROUGH 5, | ) | |
| | ) | |
| Defendants. | ) | |

i

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

# Table of Contents

INTRODUCTION .................................................................................................... 1

PARTIES ................................................................................................................. 5

JURISDICTION AND VENUE ............................................................................... 8

FACTUAL ALLEGATIONS .................................................................................. 9

  I.  Product at Issue ............................................................................................. 9

     A.  Novo Nordisk's Ozempic® and Wegovy® ............................................ 9
     B.  Him & Hers's "Compounded Semalglutide" ...................................... 10

  II.  Defendants Were on Notice That Compounded Semaglutide is Associated with NAION and Its Sequelae .................................................................. 14

  III. Defendants' Business Model and Marketing Practices ............................... 18

  V.  Onset of Vision Loss and Diagnosis of Bilateral NAION .......................... 25

  VI. Plaintiff's Damages .................................................................................... 27

COUNT I Strict Products Liability — Design Defect ............................................ 28

COUNT II Strict Products Liability — Failure to Warn ......................................... 30

COUNT III Negligence — Negligent Manufacture and Design ............................. 31

COUNT IV Negligence — Failure to Warn and Negligent Prescribing ................. 33

COUNT V Breach of Express Warranty ................................................................ 34

COUNT VI Breach of Implied Warranty of Merchantability ................................. 35

COUNT VII Fraud ................................................................................................. 36

COUNT VIII Violation of Missouri Telehealth Statutes ....................................... 38

COUNT IX Violation of Federal Drug Distribution Laws ..................................... 40

COUNT X Loss of Consortium ............................................................................. 41

PRAYER FOR RELIEF ....................................................................................... 41

DEMAND FOR JURY TRIAL ............................................................................. 42

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

COME NOW Plaintiffs Rebecca R. Watts and Michael Watts, by and through their undersigned counsel, and for their causes of action against Defendants Hims & Hers Health, Inc., Hims, Inc., XeCare LLC, Bailey Health, LLC, Ryan Phasouk, M.D., and John Does 1 thought 5, upon information and belief, alleges as follows:

**INTRODUCTION**

1.      Vision is the most dominant of the senses and plays a critical role in every facet and stage of our lives. Without vision, a person will struggle to learn, walk, read and work.

2.      Vision loss can lead to worsened mental health, loss of or limited employment, social isolation, and the need for a caregiver.

3.      Non-Arteritic Anterior Ischemic Optic Neuropathy ("NAION") is an irreversible condition that causes sudden and permanent vision loss.

4.      Vision loss with NAION is untreatable and can result in permanent blindness.[1]

5.      Vision loss with NAION is sudden and usually discovered when a person wakes up in the morning and notices a loss of their vision in one eye.

6.      Patients with NAION suffer from blurred or darkened vision obstructing their field of view, as well as loss of color vision and loss of contrast in vision.[2]

7.      About 15% of patients who have NAION in one eye eventually develop it in their other eye too.[3]

---

[1] *Ischemic Optic Neuropathy*, Cleveland Clinic, (last reviewed 6/30/2024), available at https://my.clevelandclinic.org/health/diseases/ischemic-optic-neuropathy (last visited June 30, 2024).
[2] *Id.*
[3] *Id.*

1

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

8.      For most patients with NAION, the vision loss *will not improve with time*. Some will experience progressive worsening of their vision after the initial vision loss.[4]

9.      This is an action for damages suffered by Plaintiff Rebecca R. Watts, who was severely injured, by developing NAION as a result of her use of a Hims & Hers product that Hims & Hers calls "compounded semaglutide."

10.     Hims & Hers advertises and sells a product it calls "compounded semaglutide." Consumers inject this product into their bodies.

11.     Hims & Hers consistently advertises this product as being made with "the same active ingredient" as the weight loss and diabetes drugs Ozempic® and Wegovy®. That is false.

12.     In fact, Defendants use a different active ingredient than the active ingredient used in Ozempic® and Wegovy®. Hims & Hers's active ingredient is manufactured using a fundamentally different process which produces a different active ingredient. Although both products contain the semaglutide peptide molecule, the Hims & Hers product contains peptides that are not contained in Ozempic® and Wegovy®, among other differences. This different active ingredient made by a different process has never been meaningfully tested for safety or effectiveness or evaluated by the Food & Drug Administration ("FDA"), unlike the exhaustive testing and FDA approval process undertaken for Ozempic® and Wegovy®.

13.     While the Hims & Hers product produces a different active ingredient, the Hims & Hers compounded semaglutide still functions as a GLP-1 receptor agonist ("GLP-1 RAs"). GLP-1 RAs are prescribed, for certain patient populations, to treat type 2 diabetes, aid in chronic weight management, and reduce cardiac risk.

---

[4] *Id.*

2

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

14. The semaglutide peptide molecule at the core of Hims & Hers's compounded product is the same GLP-1 RA molecule, regardless of how it was manufactured. The scientific literature consistently refers to compounded semaglutide products as "compounded GLP-1 receptor agonists" – because the semaglutide peptide itself, when present, binds and activates the GLP-1 receptor.

15. Defendants' compounded semaglutide functions as a GLP-1 receptor agonist. The semaglutide peptide at its core binds and activates the GLP-1 receptor.

16. Plaintiff Rebecca R. Watts' treating physicians documented the Hims & Hers semaglutide product as a "GLP-1 RA" in her medical records, which is scientifically accurate.

17. The entire body of peer-reviewed literature linking GLP-1 receptor agonists to NAION therefore applies directly to the drug Defendants sold to Plaintiff.

18. Defendants knew, or should have known, based on preclinical trials, premarket clinical trials, post-market surveillance, and adverse event reports of NAION injuries with Ozempic or semaglutide drugs, that there was reasonable evidence of a causal association between the use of compounded semaglutide and NAION.

19. Despite this, Defendants failed to warn about the risk of NAION with semaglutide drugs.

20. Instead, Defendants aggressively built and expanded their market for compounded semaglutide through a direct-to-consumer marketing campaign of extraordinary scale and reach, including: spending millions of dollars on television advertising, including a prominent advertisement during the 2025 Super Bowl that drew formal criticism from United States Senators and the FDA Commissioner for misleading consumers about the risks of the product; saturating social media platforms including Facebook, Instagram, TikTok, and YouTube with thousands of

3

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

advertisements for their compounded semaglutide product; paying celebrity influencers including Miley Cyrus, Kristen Bell, Rob Gronkowski, Alex Rodriguez, and Jennifer Lopez to promote their products; and exploiting their telehealth platform to reach consumers directly, bypassing the traditional physician-patient relationship and the safeguards it provides. Defendants conducted this massive marketing campaign while systematically concealing the known risks of their product, including the risk of NAION, and while falsely representing that their compounded semaglutide was made with "the same active ingredient" as FDA-approved Ozempic® and Wegovy® – a representation the FDA subsequently found to be false and misleading.

21.     Defendants intentionally targeted the American population for the sale of their weight-loss drugs. Defendants understood the vast financial potential of marketing a weight-loss medication in the United States where obesity rates were on the rise despite the culture's obsession with losing weight and being thin.

22.     Defendants also sought to make its products more accessible by, among other things, marketing through telemedicine where the criteria for qualifying for the drugs, e.g., Body Mass Index ("BMI"), are more easily manipulated.

23.     Defendants' efforts to conceal (or minimize) the risks associated with taking their product, including the risk of developing NAION were intended to create the impression that these were "magic pills" to help a person lose weight. However, Defendants never disclosed that many people who take these drugs stop taking them because of the drastic side effects (thereby never achieving weight loss or any health benefit allegedly associated with the drug). What is worse is that Defendants kept this information hidden while actively degrading trust in the prevailing view that lifestyle changes like proper nutrition and exercise were the keys to health and can accomplish long-lasting weight-loss and management for most people.

4

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

24.     Hims & Hers misleads consumers into believing its product is just as safe and effective as Ozempic® and Wegovy®, including because it uses "the same active ingredient," which is false.

25.     Plaintiff would not have taken the Hims & Hers product if she had been provided with a full and clear warning of the true risks of taking this drug, like the risk of developing NAION and its sequelae.

26.     Defendants' marketing campaigns have altered the public understanding of weight loss treatment, creating the impression that its product was a "miracle drug." But patients like Plaintiff Rebecca R. Watts were lured into a false sense of hope that the Hims & Hers product would guarantee results and be efficacious and safe. Plaintiff injected Defendants' compounded semaglutide product believing that she was doing something to promote her health when, in fact, it had the opposite effect.

27.     As a result of the foregoing, Plaintiff Rebecca R. Watts took the Hims & Hers semaglutide drug, which caused her to develop NAION. Plaintiff is now suffering from the devastating consequences of vision loss and will continue to suffer from the loss of vision for the rest of their life.

**PARTIES**

28.     Plaintiff Rebecca R. Watts is a resident of House Springs, Jefferson County, Missouri. Beginning in or about November 2024, Plaintiff was prescribed, sold, and injected with compounded semaglutide, a GLP-1 receptor agonist drug, which was marketed, promoted, prescribed, compounded, packaged, and distributed by Defendants. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered severe and permanent injuries,

5

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

including bilateral non-arteritic anterior ischemic optic neuropathy (NAION) and resulting legal blindness.

29.    One of the vials Plaintiff Rebecca R. Watts purchased includes the following identifying information:





Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

30.     Plaintiff Michael Watts is the husband of Plaintiff Rebecca R. Watts and a resident of House Springs, Jefferson County, Missouri. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Michael Watts has suffered and continues to suffer loss of consortium, including loss of companionship, services, and support of his wife.

31.     Defendant Hims & Hers Health, Inc. ("Hims & Hers") is a Delaware corporation with its principal place of business in San Francisco, California. At all times material hereto, Hims & Hers operated through its websites forhers.com and hims.com, and through its smartphone application, to market, promote, prescribe, compound, package, and distribute compounded semaglutide drugs directly to consumers, including Plaintiff, throughout the United States and specifically into the State of Missouri.

32.     Defendant Hims, Inc. ("Hims") is, and at all times mentioned in this Complaint was a publicly traded corporation organized and existing under the laws of the state of Delaware with its principal place of business purportedly in San Francisco, California.

33.     Defendant XeCare LLC ("XeCare") is a compounding pharmacy and an affiliated division of Hims & Hers. XeCare is responsible for compounding, packaging, and shipping the semaglutide drugs prescribed through the Hims & Hers platform, including the specific drug products shipped to and injected by Plaintiff. XeCare fills prescriptions exclusively for Hims & Hers clients and operates as a functionally integrated component of the Hims & Hers enterprise.

34.     Defendant Bailey Health, LLC ("Bailey Health") is an affiliated medical group of Hims & Hers and is responsible for managing and providing physician services to clients of Hims & Hers, including Plaintiff Rebecca R. Watts. Through Bailey Health, Hims & Hers employs or contracts with physicians to provide the prescribing function that is nominally interposed between clients and the dispensing of the subject drugs.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

35.     Defendant Ryan Phasouk, M.D. ("Dr. Phasouk") is a physician who, at all times material hereto, was employed by or contracted with Defendants to prescribe compounded semaglutide to clients of Hims & Hers, including Plaintiff Rebecca R. Watts. Dr. Phasouk directly communicated with Plaintiff through the Hims & Hers mobile application in the course of prescribing and dosing the subject drugs, and at all times acted within the scope of his employment or agency with Defendants. Dr. Phasouk did not conduct a proper medical interview or physical examination of Plaintiff, did not adequately review Plaintiff's relevant medical history, and failed to warn Plaintiff of any risks associated with the subject drugs.

36.     Defendants John Does 1 through 5 are individuals or entities whose identities are currently unknown to Plaintiffs but who participated in or are responsible for some or all of the wrongful conduct described herein. Plaintiffs will seek leave to amend this Petition to identify and name such Defendants as their identities become known through discovery.

37.     All Defendants shall be referred to herein collectively as "Defendants." At all times material hereto, the named corporate Defendants operated as a vertically integrated enterprise that controlled every aspect of the prescription and delivery of the subject drugs to Plaintiff Rebecca R. Watts, from marketing and intake, through prescribing, compounding, packaging, and shipping. The corporate Defendants functioned as alter egos of one another and served a common corporate master in these endeavors.

## JURISDICTION AND VENUE

38.     This Court has jurisdiction over Defendants because Defendants conduct substantial and continuous business in the State of Missouri, including marketing and promoting their products to Missouri residents, prescribing and shipping their compounded drugs to Missouri

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

residents, and specifically directing their compounded semaglutide to Plaintiff Rebecca R. Watts at her home address in House Springs, Missouri.

39.     Each of the Defendants has sufficient minimum contacts with the State of Missouri so as to render the exercise of personal jurisdiction permissible under traditional notions of fair play and substantial justice.

40.     Venue is proper in Jefferson County because Plaintiffs reside in Jefferson County, and because the injuries and damages alleged herein were suffered by Plaintiffs in Jefferson County.

## FACTUAL ALLEGATIONS

### I.     Product at Issue

#### A.  Novo Nordisk's Ozempic® and Wegovy®

41.     Novo Nordisk Inc. ("Novo Nordisk") manufactures and sells Ozempic® and Wegovy®. Novo Nordisk also manufactures the semaglutide active ingredient used in Ozempic® and Wegovy®. Novo Nordisk does not sell its semaglutide active ingredient to any other company, including Hims & Hers.[5]

42.     Semaglutide is a peptide, which is a biological molecule composed of a long chain of amino acids in a specific sequence that is unique to that peptide. There are 20 different naturally occurring amino acids. These can be arranged in nearly infinite different sequences to make up peptides and proteins, which are the biological molecules that are responsible for most of the human body's functions. Proteins are just longer peptides.

---

[5]     Novo     Nordisk     Apr.     22,     2025     Letter     to     FDA     at     1     n.1, https://downloads.regulations.gov/FDA2017-N-2562-0034/attachment_1.pdf.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

43.    Any change in the amino acid sequence of semaglutide creates a different peptide and can change its function and the safety and effectiveness of any drug product containing that altered peptide.

44.    Once injected into a consumer, semaglutide molecules mimic the naturally occurring hormone glucagon-like peptide-1 ("GLP-1"). However, while naturally occurring GLP-1 lasts only about 1.5 minutes before the body's enzymes break it down, semaglutide resists that breakdown for more than 7 days, resulting in glucose control and weight loss. This difference in how long semaglutide last in the body compared to GLP-1 is due to biochemical modifications Novo Nordisk scientists made to the GLP-1 peptide molecule. The U.S. Patent Office awarded the scientists patents for their invention.

45.    Novo Nordisk uses a specific biological process to manufacture its biological active ingredient. This process uses recombinant DNA technology, which is a biological process where living organisms (yeast) produce the precise amino acid sequence of semaglutide.[6] Basically, Norvo Nordisk scientists manipulate yeast cells through biotechnological methods so that the cells produce the semaglutide peptide. This produces extremely pure copies of the peptide with very few impurity peptides having different amino acid sequences or other chemical impurities, but it is expensive and technologically complicated.

46.    Novo Nordisk scientists spent many years performing scientific studies on Ozempic® and Wegovy® in order to demonstrate that Ozempic® and Wegovy® are safe and effective, including many large clinical trials in humans. This extensive scientific work culminated in an exhaustive FDA review and approval process for each drug product.

### B.  Him & Hers's "Compounded Semalglutide"

---

[6] Novo Nordisk Oct. 22, 2024 Letter to FDA at 5, https://downloads.regulations.gov/FDA-2017-N-2562-0029/attachment_1.pdf.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

47.     Hims & Hers sells a purported knock-off version of Ozempic® and Wegovy®. Unlike Novo Nordisk's FDA-approved products, the knock-off product has never been meaningfully tested for safety or effectiveness, nor evaluated in any way by FDA.

48.     Hims & Hers misleads consumers into believing its "compounded semaglutide" product is the same as Ozempic® and Wegovy®, including because it uses "the same active ingredient." But that is false.

49.     In fact, Hims & Hers uses a different active ingredient than the active ingredient used in Ozempic® and Wegovy®.

50.     Hims & Hers's active ingredient is not made using the biological recombinant DNA process in yeast cells that is used to manufacture Ozempic®'s and Wegovy®'s active ingredient.

51.     Instead, Hims & Hers's active ingredient is made using a synthetic chemical process.

52.     In this chemical process, each amino acid is added to the chain one by one using chemical reactions. Along with the semaglutide peptide molecule, this chemical process also produces peptides that are different than semaglutide, having missing amino acids, extra amino acids, substituted amino acids, and/or truncated amino acid sequences, among other problems not associated with the biological recombinant DNA process used by Novo Nordisk.

53.     The synthetic chemical process is much cheaper and easier than the biological recombinant DNA process, but it results in a different active ingredient with a different collection of peptides, along with the semaglutide molecule. Among other differences, this process results in peptides that are not contained in Ozempic® and Wegovy®.

54.     Testing confirmed that Hims & Hers's active ingredient is not "the same," includes peptides that are not contained in Ozempic® and Wegovy®, and was made using a synthetic

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

chemical process, not a biological recombinant DNA process like Novo Nordisk uses to manufacture its semaglutide active ingredient.

55.    The different active ingredients containing different peptide molecules can have serious health consequences, including immunogenicity, which is when a foreign substance (like novel peptides) triggers a consumer's immune response. This can result in immunologic side effects such as rash, flu-like symptoms, inflammation, or anaphylaxis, among others.

56.    This immunogenic response to the different active ingredient can also result in cross reactivity, where a consumer's immune system mounts a response not only against the different active ingredient, but also against authentic Ozempic® and Wegovy® if a consumer takes it in the future, risking serious side effects and diminished efficacy.

57.    Worse still, this immunogenic response to the different active ingredient can also result in cross reactivity with a consumer's own naturally occurring GLP-1 peptide hormone, with serious health consequences.

58.    Both novel and increased levels of impurities have been identified by Novo Nordisk in compounded versus originator semaglutide samples, posing some risk of immunogenicity. And some impurities have the potential to trigger immune responses leading to side effects – a concern illustrated by the clinical trial discontinuation of taspoglutide, which demonstrated that even small modifications in peptide structure can lead to severe reactions such as anaphylaxis.[7] Any newly identified peptide impurity exceeding 0.5% must undergo immunogenicity assessment to prevent adverse immune reactions.[8] Hims & Hers's product never underwent that assessment.

---

[7] DiStefano M, et al., Compounded glucagon-like peptide-1 receptor agonists for weight loss: the direct-to-consumer market in Colorado, J Pharm Policy Pract. 2024 Dec 24;18(1):2441220. doi: 10.1080/20523211.2024.2441220. eCollection 2025. https://pmc.ncbi.nlm.nih.gov/articles/PMC11703442/ (last visited June 30, 2026).

[8] https://biotech-spain.com/en/articles/ozempic-impurities-explained-ensuring-purity-and-safety-in-semaglutide-based-therapies/ (last visited June 30, 2026).

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

59.     Hims & Hers's "compounded semaglutide" product also includes a chemical called benzyl alcohol,[9] which is not included in Ozempic® and Wegovy®[10]. This chemical could negatively interact with peptides contained in Hims & Hers's product. Upon information and belief, Hims & Hers has never tested whether this chemical has adverse effects in combination with the unique active ingredient contained in its product.

60.     Novo Nordisk has also stated that chemically synthesized active ingredients like Hims & Hers's are "meaningfully different" than Novo Nordisk's biologically produced active ingredient in Ozempic® and Wegovy®.[11]

61.     Novo Nordisk tested numerous "compounded semaglutide" products and active ingredients and compared them to its Ozempic® and Wegovy® products and active ingredient. Upon information and belief, Hims & Hers's product was among those Novo Nordisk tested. Based upon this testing, Novo Nordisk petitioned FDA to add semaglutide to FDA's list of products that present demonstrable difficulties for compounding.[12] Novo Nordisk explained to FDA that

> The semaglutide bulk drug substance used by compounders is not the same semaglutide used in [Novo Nordisk's] FDA-approved medicines. [Novo Nordisk] manufactures its semaglutide in yeast using recombinant DNA technology, whereas the compounders use active pharmaceutical ingredients that are manufactured by chemical synthesis. [Novo Nordisk] does not sell semaglutide to any entities for use in compounding. Furthermore, the semaglutide used in [Novo Nordisk's] FDAapproved semaglutide medicines is manufactured exclusively by [Novo Nordisk] and is not obtained from a third-party supplier. For the purposes of this supplement, we will refer to the compounded products as containing "semaglutide,"

---

[9] https://news.hims.com/newsroom/quality-transparency-making-certificates-of-analysis-available-to-every-hims-hers-customer (last visited June 30, 2026).
[10] https://www.accessdata.fda.gov/drugsatfda_docs/label/2025/215256s026lbl.pdf (last visited June 30, 2026).
[11] Novo Nordisk Apr. 22, 2025 Letter to FDA at 1 n.1, https://downloads.regulations.gov/FDA2017-N-2562-0034/attachment_1.pdf.
[12] *Id.*

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

even though these bulk drug substances are meaningfully different from [Novo Nordisk's] semaglutide.[13]

62.     While the Hims & Hers product produces a different active ingredient, the Hims & Hers compounded semaglutide still functions as a GLP-1 receptor agonist ("GLP-1 RAs").  GLP-1 RAs are prescribed, for certain patient populations, to treat type 2 diabetes, aid in chronic weight management, and reduce cardiac risk.

63.     The semaglutide peptide molecule at the core of Hims & Hers's compounded product is the same GLP-1 RA molecule, regardless of how it was manufactured. The scientific literature consistently refers to compounded semaglutide products as "compounded GLP-1 receptor agonists" – because the semaglutide peptide itself, when present, binds and activates the GLP-1 receptor. And Plaintiff Rebecca R. Watts' treating physicians documented it as a "GLP-1 RA" in her medical records, which is scientifically accurate.

**II.      Defendants Were on Notice That Compounded Semaglutide is Associated with NAION and Its Sequelae**

64.     Defendants knew or should have known of the causal association between the use of its compounded semaglutide products and the risk of developing NAION and its sequelae, but they ignored it. Defendants' actual and constructive knowledge derived from clinical studies, adverse events reports made to them, and medical literature, including the epidemiological studies, and case reports referenced in this Petition.

65.     It has been known since at least 2016 that the human eye contains GLP-1 receptors. This finding has been confirmed by Novo Nordisk's own scientists.[14] Defendants knew or should

---

[13] *Id.*

[14] Hernandez C. et al., *Topical Administration of GLP-1 Receptor Agonists Prevents Retinal Neurodegeneration in Experimental Diabetes*, Diabetes (Jan. 2016); Hebsgaard J.B. et al., *Glucagon-like peptide-1 receptor expression in the human eye*, Diabetes Obes. Metab. (2018).

have known that the GLP-1 receptor is present in the human optic nerve, and that GLP-1 agonist activity could influence optic nerve head perfusion and thereby increase the risk of NAION.

66.    On July 3, 2024, *JAMA Ophthalmology* published a landmark study demonstrating a significant association between semaglutide and NAION. The study evaluated data from December 2017 through November 2023 and showed that patients with type 2 diabetes taking semaglutide had more than four times the risk of developing NAION compared to those taking non-GLP-1 RA medications (hazard ratio 4.28). For patients taking semaglutide for overweight or obesity, the risk was nearly *seven times greater* (hazard ratio 7.64). The study proposed that expression of the GLP-1 receptor in the human optic nerve, and GLP-1 RA-induced enhanced sympathetic nervous system activity, may influence optic nerve head perfusion and increase the risk of NAION.[15] Defendants knew or should have known of this published study and the causal association it identified.

67.    A large Danish cohort study of 424,152 persons with type 2 diabetes, published in the *International Journal of Retina and Vitreous*, found that once-weekly semaglutide more than doubles the five-year risk of NAION compared to non-users, even after controlling for multiple confounding factors.[16] The study further observed that after the introduction of once-weekly semaglutide in Denmark in November 2018, the annual number of first-time NAION episodes reached an all-time high for the years 2019–2023.[17]

---

[15] Hathaway et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, 142 JAMA Ophthalmology 732 (2024).

[16] Jakob Grauslund, et al., *Once-weekly semaglutide doubles the five-year risk of nonarteritic anterior ischemic optic neuropathy in a Danish cohort of 424,152 persons with type 2 diabetes*, INT. J. RETINA AND VITREOUS, 10, 97 (2024), available at
https://journalretinavitreous.biomedcentral.com/articles/10.1186/s40942-024-00620-x (last visited June 30, 2026).

[17] *Id.*

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

68.    A 2025 cohort study conducted across Denmark and Norway similarly found that users of semaglutide were almost twice as likely to develop NAION compared to patients taking sodium-glucose co-transporter 2 inhibitors (SGLT-2is), another class of prescription medications used to treat type 2 diabetes and obesity.[18]

69.    Subsequent large national database studies further confirmed the association. The paper by Hsu et al. published in *JAMA Ophthalmology* in 2025, found an increased NAION risk among patients with a history of semaglutide use, particularly in patients taking GLP-1 RA drugs for multiple years.[19] A separate 2025 study by Cai et al., also published in *JAMA Ophthalmology*, using a self-controlled case series analysis that effectively compares individual patients' NAION risk while taking versus not taking semaglutide, found a statistically significant increased risk of NAION among semaglutide users.[20]

70.    The FDA's Adverse Events Reporting System (FAERS) contains multiple reports of optic ischemic neuropathy associated with GLP-1 receptor agonists.[21] Analysis of this data shows that patients taking GLP-1 RA drugs report NAION-related injuries at a statistically significantly greater rate than patients taking other diabetes or weight-loss drugs. Multiple peer-

---

[18] Simonsen et al., *Use of semaglutide and risk of non-arteritic anterior ischemic optic neuropathy: A Danish-Norwegian cohort study*, Diabetes Obes. Metab. (2025).

[19] Hsu et al., *Semaglutide and Nonarteritic Anterior Ischemic Optic Neuropathy Risk Among Patients With Diabetes*, JAMA OPHTHALMOLOGY (2025). https://pubmed.ncbi.nlm.nih.gov/40146102/ (last visited June 30, 2026).

[20] Cai et al., Semaglutide and Nonarteritic Anterior Ischemic Optic Neuropathy, JAMA OPHTHALMOLOGY (2025) https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2830475 (last visited June 30, 2026).

[21] The FAERS database is accessible online at https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard. See also Castellana E, *Potential risk of non-arteritic anterior ischaemic optic neuropathy in semaglutide users: pharmacovigilance insights*, EUR. J. HOSP. PHARM. (2024) (online ahead of print). Note that FAERS does not contain a code for NAION itself, only "optic ischemic neuropathy," a condition that encompasses NAION.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

reviewed pharmacovigilance analyses have confirmed this signal, including findings of an 80% increased risk of reporting vision loss associated with GLP-1 RAs compared to other weight-loss drugs, and increased reporting rates of optic ischemic neuropathy exceeding 1,000% compared to comparator drug classes.[22]

71.     At least fourteen cases of NAION suspected to be causally associated with the use of GLP-1 RA drugs have been reported in published, peer-reviewed case reports, including cases involving semaglutide specifically.[23] In one notable reported case, the patient experienced worsening of NAION upon re-challenge — i.e., her condition deteriorated after she restarted her GLP-1 RA drug — providing strong individual-level evidence of causation.[24]

72.     The FDA formally recognizes GLP-1 receptor agonists as a drug class based on similarities in mechanism of action, physiologic effects, and chemical structure. Defendants' compounded semaglutide functions as a GLP-1 receptor agonist — the semaglutide peptide at its core binds and activates the GLP-1 receptor, and Rebecca Watts' treating physicians consistently documented the drug as a "GLP-1RA" in her medical records. The entire body of peer-reviewed literature linking GLP-1 receptor agonists to NAION therefore applies directly to the drug Defendants sold to Plaintiff. At all times material hereto, Defendants knew or should have known

---

[22] *See* Kim et al., *Adverse drug reaction patterns of GLP-1 receptor agonists approved for obesity treatment: Disproportionality analysis from global pharmacovigilance database*, Diabetes Obes. Metab. (2025); Massey et al., *Increased vision impairment reports linked to semaglutide: analysis of FDA adverse event data*, BMC Medicine (2025).

[23] Maceroni et al., *Non arteritic ischemic optic neuropathy in a patient taking semaglutide: Is there a relation? A case report and a review of the literature*, EUROPEAN JOURNAL OF OPHTHALMOLOGY (2025) (reporting one case); Ahmadi et al., *Anterior ischemic optic neuropathy in patients treated with semaglutide: report of four cases with a possible association*, BMC OPHTHALMOLOGY (2025) (reporting four cases); Katz et al., *Ophthalmic Complications Associated With the Antidiabetic Drugs Semaglutide and Tirzepatide*, JAMA OPHTHALMOLOGY (2025) (online ahead of print) (reporting nine cases).

[24] *See* Katz et al.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

of this body of scientific evidence and deliberately failed to warn Plaintiff of the NAION risk it demonstrated.

### III. Defendants' Business Model and Marketing Practices

73. Hims & Hers is a telehealth company that markets, promotes, prescribes, compounds, packages, and distributes compounded pharmaceutical drugs directly to consumers through its websites and mobile application, bypassing traditional pharmacy and physician relationships.

74. Mass-marketed "compounded drugs" sold by telehealth companies like Hims & Hers is a very recent phenomenon. These companies take advantage of purported loopholes in the statutory and regulatory framework that has governed the sale of prescription drugs for decades. These purported loopholes left room for the ancient art of compounding, which was historically local, rare, and small-scale. But modern technological advances in internet-based commerce, sophisticated logistics, and a globalized supply chain allow scale and reach never imagined when the drug laws were passed.

75. The result is the massive-scale advertising and sale of knock-off drugs with little regulatory oversight (euphemistically described as "compounding"), although consumers are not aware of this lack of oversight. Consumers believe these drugs are tested, evaluated, and regulated like the brand-name and generic drugs they have historically been prescribed by trusted doctors.

76. Among the products Hims & Hers sells is a compounded GLP-1 receptor agonist drug, which it markets as "Compounded Semaglutide" and describes as a "GLP-1 injection." Hims & Hers sells this product through both its forhers.com platform (directed to women) and its hims.com platform (directed to men).

18

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

77.     At all times material hereto, Hims & Hers advertised its compounded semaglutide as being made with "the same active ingredient as Ozempic® and Wegovy®." These representations were false and misleading because, among other reasons, Hims & Hers's compounded semaglutide is produced through a synthetic chemical process, not the biological recombinant DNA process used to manufacture Ozempic® and Wegovy®. The different manufacturing process results in a different active ingredient that includes peptide impurities not present in FDA-approved semaglutide products, and which has never been tested for safety or efficacy, nor evaluated by the FDA.

78.     It is well established that, particularly with biological molecules like peptides and proteins, "the process defines the product."[25]

79.     At least two peer-reviewed scientific articles have been published detailing the significant differences between chemically produced synthetic active ingredient like Hims & Hers's and the biologically produced active ingredient in Ozempic® and Wegovy®.[26] These articles include data from detailed scientific analysis of "compounded semaglutide" products showing the significant differences. Upon information and belief, Hims & Hers's "compounded semaglutide" was among the products studied in these articles.

80.     As detailed above, Novo Nordisk has filed submissions with FDA requesting that semaglutide be placed on FDA's list of products that present demonstrable difficulties for compounding due to the differences in the active ingredients produced by the different processes.[27]

---

[25] Arne Staby et al., Influence of Production Process and Scale on Quality of Polypeptide Drugs: A Case Study on GLP-1 Analogs, 37 Pharm. Res. 120, 2 (2020).

[26] Morten Hach et al., Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, 41 Pharm. Res. 1991 (2024); Arne Staby et al., Influence of Production Process and Scale on Quality of Polypeptide Drugs: A Case Study on GLP-1 Analogs, 37 Pharm. Res. 120 (2020).

[27] *See, e.g.,* Novo Nordisk Apr. 22, 2025 Letter to FDA, https://downloads.regulations.gov/FDA2017-N-2562-0034/attachment_1.pdf.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

Novo Nordisk submitted data from scientific testing on various chemically synthesized "compounded semaglutide" products showing the significant differences between the active ingredients in those products and the active ingredient in Ozempic® and Wegovy®.[28] Again, upon information and belief, Hims & Hers's "compounded semaglutide" was among the products disclosed in these FDA submissions, although the data was submitted confidentially.

81.    Testing performed on Hims & Hers's "compounded semaglutide" product has demonstrated it is in fact a different active ingredient that, along with the semaglutide peptide, also contains peptides that are not in Ozempic® and Wegovy®. These different peptides are the result of the fundamentally different chemical process used to produce the active ingredient compared to the biological process used to produce the active ingredient contained in Ozempic® and Wegovy®.

82.    Ozempic® and Wegovy®, with their unique active ingredient, have been extensively studied and evaluated by FDA, including for any immunogenic potential. Hims & Hers's "compounded semaglutide" has not been meaningfully studied or evaluated by FDA at all, let alone for immunogenicity.

83.    Hims & Hers never informed Plaintiffs or the putative class of this risk associated with its "compounded semaglutide" product. To the contrary, it conceals the differences and risks from consumers.

84.    On September 9, 2025, the U.S. Food and Drug Administration sent warning letters to Hims & Hers concluding that its website and app content, including the representation that its

---

[28] *See, e.g.*, id. at 7-15, appendix.

20

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

products were made with "the same active ingredient as Ozempic® and Wegovy®," was "false or misleading."[29]

85.     Among other concerns, FDA focused on the statement "[w]eekly injectable GLP-1 with the same active ingredient as Ozempic and Wegovy," which appears on hims.com and forhers.com. FDA concluded that these statements "imply that your products are the same as an FDA-approved product when they are not," so "these claims are false or misleading."[30]

86.     Defendants had been making these representations to Plaintiff and other consumers since at least May 2024.

87.     Hims & Hers's business model is structured so that consumers select and purchase the compounded semaglutide product before any meaningful interaction with a prescribing physician. Consumers are first exposed to advertising, then complete an online questionnaire, and then enter payment information — all before any physician reviews their case. The physician's role is, in practice, a post-hoc rubber stamp of a consumer purchasing decision that has already been made.

88.     Through XeCare, its affiliated compounding pharmacy, and Bailey Health, its affiliated medical group, Hims & Hers controls every aspect of the process by which compounded semaglutide is marketed, prescribed, compounded, and delivered to its clients, including Plaintiff. Defendants acted as a fully integrated enterprise in delivering the subject drugs to Plaintiff.

**IV.     Plaintiff Rebecca Watts's Use of Defendants' Compounded Semaglutide**

89.     In or about November 2024, Plaintiff Rebecca R. Watts became a client and patient of Defendants through the Hers platform at forhers.com.

---

[29] FDA Warning Letter to Hims & Hers for the Hers Website (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hims-hers-health-inc-dba-hers-716825-09092025 (last visited June 30, 2026).
[30] *Id.*

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

90. Consumers select the product they want to purchase before ever interacting with a Hims & Hers prescriber. This was Plaintiff Rebecca R. Watts' experience as well. She selected "compounded semaglutide," believing it was made with "the same active ingredient as Ozempic® and Wegovy®," before ever receiving a communication from a prescriber.

91. Plaintiff Rebecca R. Watts also submitted her credit card and other billing information before ever receiving any communication from a Hims & Hers prescriber.

92. After a consumer decides to proceed with purchasing "compounded semaglutide," they are presented a handful of questions.

93. At the time of enrollment, Defendants' online intake process presented Plaintiff Rebecca R. Watts with a list of medical conditions and asked her to identify which she had. Plaintiff had Stage 3a chronic kidney disease ("CKD"), a condition that is a known risk factor for NAION. Plaintiff disclosed her kidney disease during the enrollment process, and Defendants received actual or constructive notice of this condition.

94. After these questions and additional deceptive advertisements, consumers can click a link to "continue with Compounded Semaglutide."

95. After clicking that link, the consumer enters their address and credit card information. It then states that a "licensed provider" will respond to the consumers' decision.

96. Thus, consumers choose the "compounded semaglutide" product without any input from an authorized prescriber.

97. Plaintiff Rebecca R. Watts never spoke with a Hims & Hers "licensed provider." She simply received a message from one of Hims & Hers's prescribers informing them that they had been approved for "compounded semaglutide."

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

98. This message from a "licensed provider" appears to be an automated copy-and-paste message.

99. Moreover, Plaintiffs Rebecca R. Watts' apparently copy-and-pasted message from prescriber includes the same false and misleading representation: "The medication I'm prescribing you is proven to reduce appetite and promote weight loss." This is false and misleading because Hims & Hers's product has never been "proven" to reduce appetite and promote weight loss; only Ozempic® and Wegovy® have been so proven. This representation implies clinical studies were performed on the product, but no such studies have been performed.

100. At no point in the purchasing process, did any prescriber discuss any other options, risks, nor the composition of the product in any way.

101. No prescriber ever discussed whether Hims & Hers's "compounded semaglutide" product is "the same" as Ozempic® and Wegovy® or actually contains a different active ingredient with a different mixture of peptides that present risks not associated with Ozempic® and Wegovy®. They simply prescribed "compounded semaglutide" at a consumer's request.

102. The purported "licensed providers" that rubber stamped Plaintiff Rebecca R. Watts' choice did not influence that purchasing decision in any way.

103. Defendants approved Plaintiff Rebecca R. Watts' enrollment and prescribed compounded semaglutide without conducting a proper medical interview, without performing a physical examination, without consulting with Plaintiff's treating nephrologist, and without adequately reviewing Plaintiff's medical history. A questionnaire completed online was the sole basis for Defendants' prescribing decision.

104. Plaintiff Rebecca R. Watts' primary care provider, Dr. Katharine Fash, NP, documented on November 11, 2024 — the same day as Plaintiff's regular primary care visit —

23

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

that Plaintiff was "thinking about getting semaglutide through 'Hers' online clinic." At that same visit, Plaintiff Rebecca R. Watts' primary diagnosis was Stage 3a chronic kidney disease. Despite the well-documented clinical risk that CKD poses for NAION, Defendants prescribed compounded semaglutide to Plaintiff without any warning, contraindication, or referral to her nephrologist.

105.    Defendants' subscription records for Plaintiff Rebecca R. Watts confirm the treatment was described as "GLP-1 Injections / Compounded Semaglutide" and that the drug was shipped to Plaintiff's home address of 6141 Dulin Creek Road, House Springs, Missouri.

106.    Defendant Ryan Phasouk, M.D., the "prescribing physician," first communicated with Plaintiff Rebecca Watts through the Hims & Hers mobile application *after* she was prescribed compounded semaglutide and began use. In one such message, he identified himself as "a board certified physician licensed in your state" and directed Plaintiff Rebecca R. Watts to escalate her dosage, instructing her to "start taking 50 units (1.25mg) of semaglutide each week from now on." At no time did Dr. Phasouk warn Plaintiff Rebecca R. Watts of any risks associated with the drug, discuss NAION or any other serious adverse effect, inquire about her kidney function, or suggest she consult with her treating nephrologist before continuing or escalating the drug.

107.    Plaintiff Rebecca R. Watts used the compounded semaglutide as directed by Defendants. By January 14, 2025, Plaintiff Rebecca R. Watts' primary care provider documented that Plaintiff Rebecca R. Watts had been on semaglutide through Hers for approximately three months and was still escalating her dosage.

108.    Plaintiff Rebecca R. Watts experienced gastrointestinal side effects from the subject drugs, including diarrhea and vomiting, resulting in emergency department visits on April 7, 2025 and April 10, 2025.

24

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

### V.       Onset of Vision Loss and Diagnosis of Bilateral NAION

109.    In mid-June 2025 — approximately five to six months after initiating compounded semaglutide — Plaintiff began experiencing vision changes. On June 18, 2025, Plaintiff described a "transparent grey curtain" covering the inferior temporal quadrant of her right eye. She was seen by a retinal specialist who found "swollen nerves" behind both eyes and directed her to the emergency department.

110.    Plaintiff was admitted to Barnes Jewish Hospital on June 23, 2025 and remained inpatient through June 25, 2025 for evaluation of painless right-eye vision loss and bilateral optic disc edema. An MRI of the brain, brainstem, and orbits performed on June 24, 2025 showed no structural abnormality. A lumbar puncture performed on June 25, 2025 showed a normal opening pressure and bland cerebrospinal fluid. Inflammatory markers, autoimmune studies, infectious disease testing, and nutritional markers were all normal or negative, systematically ruling out other causes of Plaintiff's vision loss.

111.    Plaintiff's vision continued to deteriorate following hospital discharge. By the week of June 30, 2025, she could only distinguish colors and shadows in her right eye. On July 18, 2025, her left eye vision began to rapidly worsen. By July 21, 2025, she could only see shapes in both eyes. July 26, 2025 was Plaintiff's last day of work; her husband had to pick her up because she could no longer see well enough to drive or function at her job.

112.    On July 8, 2025, ophthalmologist Dr. Jessica Sun documented progressive optic disc edema in both eyes (Grade 4 right eye, Grade 3 left eye) and stated that, given the unremarkable workup and the presence of vascular risk factors, the likely etiology was "sequential NAION." Dr. Sun's note listed Plaintiff's risk factors including CKD, HTN, and sleep apnea.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

113. On July 22, 2025, Plaintiff's primary care provider documented that Plaintiff "has done some research and wonders if it was caused by or associated with her GLP-1 use. She has since stopped the GLP-1."

114. On July 23, 2025, neuro-ophthalmologist Dr. Leanne Stunkel of Washington University confirmed the diagnosis of bilateral, sequential Non-Arteritic Anterior Ischemic Optic Neuropathy (NAION) — right eye onset June 2025, left eye onset June-July 2025. Dr. Stunkel's note specifically documented that Plaintiff "was previously on a GLP-1RA which has been stopped." This same notation appeared in Dr. Stunkel's subsequent follow-up note of September 3, 2025.

115. NAION is an ischemic injury to the optic nerve head. NAION has been linked to semaglutide and other GLP-1 receptor agonists in peer-reviewed medical literature. As an ischemic injury, NAION typically causes minimal or no visual improvement, and the resulting visual field defects are generally permanent.

116. The temporal pattern of Plaintiff Rebecca R. Watts' injury is consistent with drug-induced NAION: drug exposure beginning November 2024, a latency period of approximately five months, acute onset in June 2025, rapid bilateral progression over approximately four to six weeks, and confirmed permanent optic nerve damage by September 3, 2025.

117. Plaintiff was never warned by Defendants of the risk of developing NAION from the use of Defendants' drugs. Had Plaintiff been so warned, she would not have used the subject drugs.

/

/

/

26

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

## VI.    Plaintiff's Damages

118.    Plaintiff Rebecca R. Watts was diagnosed as legally blind. She retired from her employment approximately three years early due to her vision loss. Plaintiff can no longer drive, read, handle finances, prepare meals independently, do laundry, or shop without assistance. Her husband, Plaintiff Michael Watts,   accompanies her on all outings. He selects her clothing, organizes her medications, and assists with daily tasks that Plaintiff can no longer perform. An occupational therapy evaluation on August 6, 2025 documented a Lawton IADL score of 2/8, reflecting severe functional dependence across all instrumental activities of daily living.

119.    Serial imaging confirmed permanent structural damage to both optic nerves. OCT testing on September 3, 2025 showed RNFL thinning in both eyes (average 71 microns OD, 83 microns OS), consistent with irreversible optic atrophy. Plaintiff Rebecca R. Watts was told by her neuro-ophthalmology team that her vision loss is permanent.

120.    Plaintiff Rebecca R. Watts has suffered and continues to suffer severe physical injury, pain, and suffering; permanent loss of vision and resulting legal blindness; loss of employment and income; loss of enjoyment of life and the ability to engage in activities she previously enjoyed, including gardening, crafts, cards, and cooking; the need for ongoing medical care, occupational therapy, and low vision services; and significant psychological and emotional harm.

121.    Plaintiff Michael Watts has suffered and continues to suffer loss of consortium, including loss of the companionship, society, comfort, services, and support of his wife.

122.    Defendants' conduct exhibited a "gold rush" mentality marked by hyper-aggressive and misleading efforts to sell compounded semaglutide as quickly and widely as possible, without adequate regard for patient safety, without adequate screening of medically vulnerable patients,

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

and without adequate warnings regarding known serious risks, including NAION. Defendants' conduct constituted willful and wanton disregard for the safety of Plaintiffs and their other clients.

## COUNT I

### Strict Products Liability — Design Defect

### (On Behalf of Plaintiff Rebecca R. Watts Against Defendants Hims & Hers and XeCare)

123.    Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

124.    The compounded semaglutide drugs manufactured, compounded, and distributed by Defendants Hims & Hers and XeCare were defective in design and formulation at the time they left Defendants' control.

125.    Defendants Hims & Hers's and XeCare's compounded semaglutide was manufactured through a synthetic chemical process, rather than the biological recombinant DNA process used to produce FDA-approved semaglutide products. This manufacturing process results in a chemically distinct active ingredient containing peptide impurities not present in Ozempic® or Wegovy®, which have never been tested for safety or efficacy and were never evaluated by the FDA.

126.    While the Hims & Hers product produces a different active ingredient, the semaglutide peptide molecule at the core of Hims & Hers's compounded product is the same GLP-1 RA molecule, regardless of how it was manufactured. The scientific literature consistently refers to compounded semaglutide products as "compounded GLP-1 receptor agonists" – because the semaglutide peptide itself, when present, binds and activates the GLP-1 receptor.

127.    Defendants knew, or should have known, based on preclinical trials, premarket clinical trials, post-market surveillance, and adverse event reports of NAION injuries with

28

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

Ozempic®, Wegovy®, or semaglutide and GLP-1 receptor agonist drugs, that there was reasonable evidence of a causal association between the use of compounded semaglutide and NAION.

128. The subject drugs, as designed and compounded, were more dangerous than an ordinary consumer would expect, and the risk of harm attendant to their use outweighed their utility, rendering the drugs defective in design.

129. The subject drugs, as designed and compounded, were in a defective condition that was unreasonably dangerous when put to a reasonably anticipated use, namely weight loss. The drugs were more dangerous than an ordinary consumer would expect, and the risk of harm attendant to their use outweighed their utility, rendering the drugs defective in design.

130. The subject drugs were insufficiently tested prior to their distribution to Plaintiff and to the public.

131. Plaintiff Rebecca R. Watts used the drugs for their intended purpose, namely weight loss, as directed by Defendants Hims & Hers and XeCare.

132. As a direct and proximate result of the defective design and formulation of the subject drugs, Plaintiff Rebecca R. Watts has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

133. Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca R. Watts demands judgment against Defendants Hims & Hers and XeCare for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

## COUNT II

### Strict Products Liability — Failure to Warn

### (On Behalf of Plaintiff Rebecca R. Watts Against Defendants Hims & Hers and XeCare)

134.    Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

135.    The compounded semaglutide drugs were manufactured, compounded, prescribed, and distributed by Defendants. Hims & Hers and XeCare.

136.    The subject drugs were unreasonably dangerous when put to a reasonably anticipated use without knowledge of their characteristics. The subject drugs were not accompanied by adequate warnings or instructions to fully apprise Plaintiff of the nature, extent, and severity of the risks and side effects associated with their use, including but not limited to the risk of developing NAION.

137.    NAION has been linked to semaglutide and GLP-1 receptor agonist drugs in peer-reviewed medical literature. Defendants knew or should have known of this risk at the time they prescribed and dispensed the subject drugs to Plaintiff.

138.    Defendants failed to disclose the known and serious risk of NAION and other vision-threatening conditions associated with their compounded semaglutide products. Defendants further failed to screen Plaintiff for risk factors known to increase the likelihood of NAION, including her Stage 3a chronic kidney disease, hypertension, and hyperlipidemia, all of which were disclosed to or accessible to Defendants at the time of prescribing.

139.    But for Defendants' failure to warn and instruct, Plaintiff would not have taken the subject drugs and would not have suffered the injuries described herein.

30

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

140. As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

141. Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

## COUNT III

### Negligence — Negligent Manufacture and Design

### (On Behalf of Plaintiff Rebecca R. Watts Against Defendants Hims & Hers and XeCare)

142. Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

143. At all times material hereto, Defendants Hims & Hers and XeCare were engaged in the business of designing, formulating, compounding, manufacturing, packaging, and distributing the compounded semaglutide drugs that were prescribed to and injected by Plaintiff Rebecca R. Watts.

144. Defendants Hims & Hers and XeCare owed a duty to Plaintiff and to all foreseeable users of their compounded semaglutide to exercise reasonable care in the design, formulation, compounding, manufacture, testing, and distribution of the drugs so that they would be reasonably safe for their intended and foreseeable use.

145. Defendants Hims & Hers and XeCare breached that duty and were negligent in, among other things: (a) designing and formulating their compounded semaglutide using a synthetic chemical manufacturing process that produces a chemically distinct active ingredient containing

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

peptide impurities not present in FDA-approved semaglutide products; (b) failing to adequately test their compounded semaglutide for safety, efficacy, and immunogenicity before distributing it to the public; (c) manufacturing and compounding the drugs in a manner that introduced peptide impurities capable of causing serious adverse health effects, including NAION and immunogenic reactions; (d) formulating the product with benzyl alcohol without testing whether that chemical adversely interacts with the product's unique active ingredient; (e) failing to implement adequate quality controls to ensure the drugs were reasonably safe; and (f) placing the drugs into the stream of commerce when Defendants knew or should have known they were unreasonably dangerous.

146.    A reasonably careful drug manufacturer and compounder, knowing what Defendants knew or should have known about the differences between chemically synthesized compounded semaglutide and FDA-approved semaglutide, the presence of peptide impurities, and the documented association between GLP-1 receptor agonists and NAION, would not have designed, formulated, manufactured, or distributed the drugs as Defendants did.

147.    As a direct and proximate result of the negligent manufacture and design of the subject drugs by Defendants Hims & Hers and XeCare, Plaintiff Rebecca R. Watts has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

148.    Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca R. Watts demands judgment against Defendants Hims & Hers and XeCare for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

**COUNT IV**

**Negligence — Failure to Warn and Negligent Prescribing**

**(On Behalf of Plaintiff Rebecca R. Watts Against All Defendants)**

149.    Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

150.    Defendants owed duties of care to Plaintiff, including duties to: (a) adequately warn Plaintiff of the known and reasonably foreseeable risks associated with their compounded semaglutide, including the risk of NAION; (b) conduct a proper medical interview and examination of Plaintiff prior to prescribing; (c) review and consider Plaintiff's complete and relevant medical history, including her Stage 3a chronic kidney disease, prior to prescribing; (d) refer Plaintiff to or consult with her treating nephrologist before prescribing a drug known to present risks to patients with kidney disease; and (e) refrain from prescribing drugs that were contraindicated by Plaintiff's known medical conditions.

151.    Defendants breached each of these duties. Specifically: Defendant Dr. Phasouk and the remaining corporate Defendants prescribed and escalated compounded semaglutide to Plaintiff based solely on an online questionnaire, without conducting any proper medical interview or examination, without consulting Plaintiff's nephrologist, and without warning Plaintiff of the risk of NAION or other serious visual complications. The online questionnaire completed by Plaintiff did not constitute an acceptable medical interview or examination under the applicable standard of care.

152.    The subject drugs were unreasonably dangerous when not accompanied by adequate warnings.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

153. But for Defendants' negligence, Plaintiff would not have used the subject drugs and would not have suffered the injuries described herein.

154. As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

155. Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

## COUNT V

### Breach of Express Warranty

**(On Behalf of Plaintiff Rebecca R. Watts Against Defendants Hims & Hers and XeCare)**

156. Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

157. Through their websites, mobile application, advertising, and direct communications with Plaintiff Rebecca R. Watts, Defendants expressly represented and warranted material facts about their compounded semaglutide, including that it was made with "the same active ingredient as Ozempic® and Wegovy®," that it was "proven to reduce appetite and promote weight loss," and that it was a safe and effective treatment for weight loss.

158. These affirmations of fact and promises were made by Defendants to Plaintiff, related to the goods sold, and became part of the basis of the bargain, creating express warranties that the compounded semaglutide would conform to those affirmations and promises.

34

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

159.    Plaintiff reasonably relied upon Defendants' express warranties in deciding to purchase, pay for, and inject the compounded semaglutide.

160.    Defendants breached these express warranties because their compounded semaglutide was not made with "the same active ingredient as Ozempic® and Wegovy®" – a representation the FDA found to be false and misleading – was not "proven" to be safe or effective, and was not in fact safe, but instead was an untested product containing peptide impurities capable of causing serious injury, including the NAION and permanent vision loss that Plaintiff suffered.

161.    As a direct and proximate result of Defendants' breach of these express warranties, Plaintiff Rebecca R. Watts has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

162.    Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca R. Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

## COUNT VI

### Breach of Implied Warranty of Merchantability

### (On Behalf of Plaintiff Rebecca R. Watts Against Defendants Hims & Hers and XeCare)

163.    Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

164.    Defendants, as merchants of the subject drugs, impliedly warranted that those drugs were fit for their ordinary purpose, namely safe and effective for weight management.

165.    The subject drugs were defective in design and formulation, manufactured through an untested synthetic chemical process resulting in a chemically distinct active ingredient never

35

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

evaluated for safety or efficacy by the FDA. The subject drugs were insufficiently tested. The subject drugs were not accompanied by adequate warnings and instructions.

166.   The subject drugs were not fit for their ordinary purpose and thus violated implied warranties of merchantability. No reasonable consumer would use drugs that carry a risk of permanent bilateral blindness without being warned of that risk.

167.   As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

168.   Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

**COUNT VII**

**Fraud**

**(On Behalf of Plaintiff Rebecca R. Watts Against All Defendants)**

169.   Plaintiff Rebecca R. Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

170.   Defendants actively and knowingly misrepresented to Plaintiff and to the public the nature, safety, and composition of their compounded semaglutide drugs, including by:

(a) Falsely claiming that their compounded semaglutide was made with "the same active ingredient" as the FDA-approved brand-name drugs Ozempic® and Wegovy®, when in fact their product was produced through a fundamentally different synthetic chemical process resulting in a different active ingredient containing peptide impurities not present in FDA-approved products;

36

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

(b) Falsely implying, through the use of words such as "personalized" and "customized," that their product was specifically tailored to individual patients' unique needs, when in fact it was a mass-produced compounded drug with no individualization;

(c) Falsely implying that their compounded drugs were as safe and effective as FDA-approved semaglutide products, when in fact their product had never been tested for safety or efficacy and had never been evaluated by the FDA;

(d) Falsely describing, through Dr. Phasouk, that the prescribed medication was "proven to reduce appetite and promote weight loss," when no such proof existed for Defendants' compounded product; and

(e) Concealing and omitting the known and documented risk of NAION and other serious adverse events associated with GLP-1 receptor agonist drugs.

171. The above misrepresentations were made with the express purpose of inducing Plaintiff and others to pay Defendants for their compounded products and services.

172. Plaintiff relied upon the above misrepresentations and omissions to her detriment. She enrolled in Defendants' program, paid for and injected the subject drugs, and was never warned of the serious risks associated with their use.

173. As a direct and proximate result of Defendants' fraud and misrepresentations, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

174. Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

37

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

## COUNT VIII

### Violation of Missouri Telehealth Statutes

**(On Behalf of Plaintiff Rebecca R. Watts Against Hims & Hers Health, Inc., Bailey Health, LLC, and Ryan Phasouk, M.D.)**

175.    Plaintiff restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

176.    Missouri Revised Statute § 191.1146 provides that a physician using telemedicine must, prior to providing treatment including the issuance of prescriptions: (a) interview the patient; (b) collect or review relevant medical history; and (c) perform an examination sufficient for the diagnosis and treatment of the patient. The statute further expressly provides that a questionnaire completed by the patient, whether via the internet or telephone, does not constitute an acceptable medical interview and examination for the provision of treatment by telehealth.

177.    Missouri Revised Statute § 334.108 requires that prior to prescribing any drug through telemedicine or the internet, a physician must establish a valid physician-patient relationship as described in § 191.1146.

178.    Missouri Revised Statute § 191.1145 requires that health care providers treating patients through telemedicine in Missouri be fully licensed to practice in this state and provide telehealth services with the same standard of care as in-person services.

179.    Defendants Hims & Hers, Bailey Health, and Dr. Phasouk violated each of these statutory requirements. Specifically: Defendant Dr. Phasouk prescribed compounded semaglutide to Plaintiff based solely on an online questionnaire, without conducting a proper medical interview of Plaintiff, without performing a physical examination of Plaintiff sufficient for diagnosis and treatment, and without adequately collecting or reviewing Plaintiff's relevant medical history,

38

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

including her well-documented Stage 3a chronic kidney disease. Plaintiff's online questionnaire responses did not constitute an acceptable medical interview and examination under § 191.1146.

180. Defendants Hims & Hers and Bailey Health are vicariously liable for Dr. Phasouk's violations of Missouri's telehealth statutes, and are independently liable for structuring and operating a prescribing model that was designed to avoid meaningful physician-patient interaction and that necessarily resulted in violations of Missouri law.

181. Defendants' violations of Missouri's telehealth statutes were a direct and proximate cause of Plaintiff's injuries. Had Defendants complied with Missouri law and conducted a proper medical interview and examination before prescribing, Defendants would have been required to account for Plaintiff's chronic kidney disease and other risk factors, and either would have declined to prescribe the subject drugs or would have provided appropriate warnings and monitoring.

182. As a direct and proximate result of Defendants' violations of Missouri's telehealth statutes, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

183. Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against Defendants Hims & Hers Health, Inc., Bailey Health, LLC, and Ryan Phasouk, M.D. for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

/

/

/

/

39

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

## COUNT IX

### Violation of Federal Drug Distribution Laws

### (On Behalf of Plaintiff Rebecca R. Watts Against All Defendants)

184.    Plaintiff restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

185.    On information and belief, Defendants violated FDA rules and regulations governing the compounding and distribution of drugs by, among other things: (a) falsely characterizing their mass-produced compounded semaglutide as "personalized" and "customized" when it did not meet the regulatory definition of those terms; (b) operating as a large-scale compounder without the licenses, oversight, and compliance obligations required of such operations; and (c) distributing a compounded drug that is not legitimately compounded for an identified individual patient's particular need.

186.    On September 9, 2025, the FDA formally concluded that Defendants' advertising representations were "false or misleading" and issued warning letters to Defendants.

187.    Defendants' violations of federal drug distribution laws were a direct and proximate cause of Plaintiff's injuries.

188.    As a direct and proximate result of Defendants' violations of federal drug distribution laws, Plaintiff has suffered and will continue to suffer the severe and permanent injuries described herein, including bilateral NAION and resulting legal blindness.

189.    Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Rebecca Watts demands judgment against all Defendants for compensatory damages, punitive damages, costs of this action, and a trial by jury on all issues.

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

## COUNT X

### Loss of Consortium

### (On Behalf of Plaintiff Michael Watts Against All Defendants)

190.    Plaintiff Michael Watts restates and incorporates by reference each and every preceding allegation of this Petition as if fully set forth herein.

191.    At all times material hereto, Plaintiff Michael Watts was and is the lawful spouse of Plaintiff Rebecca R. Watts.

192.    As a direct and proximate result of Defendants' wrongful conduct and the severe and permanent injuries caused thereby to Rebecca Watts, Plaintiff Michael Watts has suffered and continues to suffer the loss of his wife's companionship, society, comfort, affection, services, support, and assistance. Michael Watts has been required to assume primary responsibility for household management and caregiving functions that his wife previously performed. He accompanies her on all outings, selects her clothing, organizes her medications, assists her in daily activities she can no longer perform independently, and has witnessed the profound diminishment of his wife's quality of life.

193.    These losses are ongoing and permanent.

194.    Defendants' conduct set out above constitutes a reckless disregard for human life and safety, thus warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Michael Watts demands judgment against all Defendants for compensatory damages, costs of this action, and a trial by jury on all issues.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rebecca R. Watts and Michael Watts respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

(a) Compensatory damages for all injuries, losses, and damages suffered by Plaintiffs, in an amount to be determined by a jury;

(b) Punitive damages against Defendants for their willful, wanton, and reckless disregard for the safety of Plaintiff and their other clients;

(c) Pre-judgment and post-judgment interest;

(d) Costs of this action; and

(e) Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all Counts and as to all issues so triable.

Respectfully submitted,

ORLOWSKY LAW, LLC

/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs

GOFFSTEIN LAW, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Electronically Filed - Jefferson - July 06, 2026 - 03:38 PM

**Law Offices of William Sasser**


/s/ William Sasser
William Sasser, 44503
231 S Bemiston Ave Ste 850
PMB 787629
St. Louis, Missouri 63105


**GARLAND LAW, P.C.**

*/s/ Michael D. Garland*
Michael D. Garland, #74663
101 W. Argonne Ave. #202
Kirkwood, MO 63122
Tel: 314-332-6228
Email: michael@garlandlawpc.com

*Attorney for Plaintiffs*